UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARK W. RAYMER,

                Plaintiff,

        v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

DECISION & ORDER

14-CV-6009P

**PRELIMINARY STATEMENT**

        Plaintiff Mark W. Raymer ("Raymer") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for Supplemental Security Income Benefits and Disability Insurance Benefits ("SSI/DIB"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (Docket # 13).

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 8, 11). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

## BACKGROUND

**I.     Procedural Background**

Raymer protectively filed for SSI and DIB on December 15, 2010, alleging disability beginning on June 10, 2010, due to high cholesterol and screws and plates in his left foot. (Tr. 243, 247).[1] On March 14, 2011, the Social Security Administration denied Raymer's claim for benefits, finding that he was not disabled. (Tr. 74-75). Raymer requested and was granted a hearing before Administrative Law Judge Andrew Henningfeld (the "ALJ"). (Tr. 32, 84, 120-26). The ALJ conducted a hearing on May 3, 2012. (Tr. 32-73). In a decision dated September 20, 2012, the ALJ found that Raymer was not disabled and was not entitled to benefits. (Tr. 13-19).

On November 26, 2013, the Appeals Council denied Raymer's request for review of the ALJ's decision. (Tr. 1-6). In the denial, the Appeals Council considered additional treatment records that predate the ALJ's decision, but declined to consider treatment records and an evaluation of Raymer's physical residual functional capacity ("RFC") employability assessment from Kevin Hopson ("Hopson"), DPM, that postdate the ALJ's determination. (Tr. 1-2, 415-58). Raymer commenced this action on January 7, 2014 seeking review of the Commissioner's decision. (Docket # 1).

**II.     Summary of Medical History[2]**

Treatment notes indicate that Dr. Kevin Hopson performed surgery on Raymer's left foot on June 10, 2010. (Tr. 341-43). Raymer had suffered a left foot injury several years prior to his surgery, which had resulted in Lisfranc ligament damage and arthritic changes to his

---

[1] The administrative transcript shall be referred to as "Tr. __."

[2] Those portions of the treatment records that are relevant to this decision are recounted herein.

left medial mid-foot area. (*Id.*). Raymer attended several appointments with Hopson after his surgery. (Tr. 331-38). During those appointments, Raymer complained of continued pain in his left foot. (*Id.*). Hopson ultimately diagnosed Raymer with status post left foot surgery with nonunion in the first metatarsal base medial cuneiform joint area. (Tr. 337). Hopson opined that the nonunion was likely due to Raymer's continued smoking. (*Id.*). Hopson indicated that revisional surgery might be necessary, but did not recommend surgery unless Raymer ceased smoking. (*Id.*).

On May 4, 2011, Raymer attended an appointment with J. Kyle Perillo ("Perillo"), DPM, for a second opinion concerning surgery on his left foot. (Tr. 372-73). Perillo conducted a physical examination and reviewed images of Raymer's foot. (*Id.*). He opined that Raymer suffered from "an apparent nonunion of the first metatarsocuneiform joint" and a possible nonunion at the second metatarsocuneiform joint. (*Id.*). Perillo recommended revisional surgery of the fusion site with bone grafting and possible bone marrow aspirate. (*Id.*). Perillo cautioned that bone grafting might not be successful due to Raymer's previous nonunion and his continued smoking, which was, according to Perillo, the likely cause of the nonunion. (*Id.*).

Raymer returned to Hopson for treatment beginning in February 2012. (Tr. 401-02). At that time, he reported that he continued to smoke approximately one pack of cigarettes per day and that he continued to experience pain in his left foot. (*Id.*). Hopson recommended that Raymer continue to use a cam walker boot for any weight bearing activities and urged Raymer to stop smoking in order to be considered a candidate for revisional surgical intervention. (*Id.*). Hopson prescribed Medrol for Raymer's pain and recommended that he return in two months. (*Id.*).

On October 15, 2012, Raymer attended a pre-operative appointment with Meredith Kyle ("Kyle"), RPA-C. (Tr. 448-50). Raymer reported continued pain, discomfort and the use of a cam walker. (*Id.*). Raymer reported that he had stopped smoking and was prepared to proceed with surgery. (*Id.*). Three days later, on October 18, 2012, Hopson performed revisional surgery on Raymer's left foot. (Tr. 453-56). After the surgery, Hopson advised Raymer to avoid weight bearing and smoking, and to use an external bone stimulator to promote bone regrowth. (*Id.*).

On October 26, 2012, Raymer returned for a post-surgery appointment with Hopson. (Tr. 451-52). Raymer reported ongoing pain and discomfort and that he had refrained from smoking. (*Id.*). Additionally, Raymer indicated that he had received his bone stimulator and planned to use it as instructed. (*Id.*). The treatment notes indicated that Raymer had called Hopson several times following his surgery to report pain and discomfort. (*Id.*). Hopson recommended that Raymer continue to ice and elevate his leg and to take his medications as instructed. (*Id.*). Hopson prescribed Norco tablets and advised Raymer to return in one week for suture removal. (*Id.*). Hopson noted that Raymer was temporarily disabled. (*Id.*).

## DISCUSSION

### I. Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the

decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

   To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

   A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). When assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

> (1) whether the claimant is currently engaged in substantial gainful activity;
>
> (2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";
>
> (3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;
>
> (4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity to perform his past work; and
>
> (5) if not, whether the claimant retains the residual functional capacity to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

### A. The ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. (Tr. 13-19). Under step one of the process, the ALJ found that Raymer has not engaged in substantial gainful activity since June 10, 2010, the alleged onset date. (Tr. 14). At

6

step two, the ALJ concluded that Raymer has the severe impairments of left foot disorder and depression. (*Id.*). At step three, the ALJ determined that Raymer does not have an impairment (or combination of impairments) that meets or medically equals one of the listed impairments. (*Id.*). The ALJ concluded that Raymer has the RFC to perform sedentary work on a regular and continuing basis within customary employer tolerances as to absences, breaks and being off-task, except that he requires a job that permits him to wear a cam walking boot for standing and ambulation and that requires no more than one hour of standing or walking in an eight-hour day, with periods of standing and walking not to exceed ten minutes in any given hour, no climbing of ladders, ropes or scaffolds, no more than occasional climbing of ramps or stairs, no balancing on uneven, narrow or slippery surfaces, no more than occasional stooping or crouching, and no kneeling or crawling. (Tr. 15). Further, the job must not require exposure to hazards such as dangerous moving mechanical parts, machinery that could cause bodily injury, or work in high, exposed places. (*Id.*). Additionally the job must involve understanding, carrying-out and remembering no more than a few simple instructions and must be routine and repetitive, involving few, if any, changes in the work setting, with well-defined work tasks requiring no more than occasional decision making or use of independent judgment and no more than frequent superficial interaction with the public, coworkers and supervisors. (*Id.*). At steps four and five, the ALJ determined that Raymer was unable to perform his prior work, but that other jobs existed in the national and regional economy that he could perform, including the positions of addresser, polisher and assembler. (Tr. 17-18). Accordingly, the ALJ found that Raymer is not disabled. (*Id.*).

B.      **Raymer's Contentions**

Raymer contends that the ALJ's determination that he is not disabled is not supported by substantial evidence and is the product of legal error. (Docket # 8-2). First, he challenges the ALJ's RFC assessment on the grounds that the ALJ failed to give appropriate weight to the opinions of Raymer's treating physician. (Docket ## 8-2 at 10-17; 14 at 1-9). Next, Raymer maintains that ALJ failed to properly assess his credibility. (Docket ## 8-2 at 17-24; 14 at 4-6).

II.     **Analysis**

I turn first to Raymer's contention that the ALJ's RFC assessment was flawed. An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 380 F. App'x 231 (2d Cir. 2010).

Raymer argues that the ALJ improperly discounted some of the opinions[3] provided by Hopson on May 1, 2012.[4] (Docket # 8-2 at 11-17). According to Raymer, although the ALJ afforded "considerable weight" to Hopson's medical source statement, he incorporated only some of the limitations identified by Hopson while inexplicably disregarding others. I agree with Raymer that the ALJ failed to provide good reasons for discounting portions of Hopson's assessment dated May 1, 2012.

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must explicitly consider:

(1)    the frequency of examination and length, nature, and extent of the treatment relationship,

(2)    the evidence in support of the physician's opinion,

(3)    the consistency of the opinion with the record as a whole,

---

[3] Raymer submitted another opinion authored by Hopson to the Appeals Council. (Tr. 2, 415-18). Raymer does not challenge the Appeal's Council's determination that the subsequent opinion constituted "new information . . . about a later time" and therefore would "not affect the decision about whether [Raymer was] disabled beginning on or before September 20, 2012." (Tr. 2).

[4] Raymer also contends that the ALJ improperly ignored "opinions" provided by Hopson in his treatment notes. (Docket ## 8-2 at 8, 14; 14 at 3-4). These "opinions" were wholly conclusory, did not identify any specific limitations arising from Raymer's left-foot impairment and reflected a conclusion that is expressly reserved to the Commissioner. As such, the ALJ was not obligated to accord significant weight to Hopson's conclusory opinions that Raymer's medical impairments prevented him from working. *See Osbelt v. Colvin*, 2015 WL 344541, *3 (W.D.N.Y. 2015) (physician's letter "which concluded that '[claimant] is unable to work in any significant capacity given ongoing emotional and physical limitations' . . . [did] not specify the nature of such limitations, or describe how they would render plaintiff incapable of work" and thus amounted to a "conclusory opinion concerning the ultimate issue of disability, [a] matter [that] is unquestionably reserved for the Commissioner") (internal quotation omitted); *Wilferth v. Colvin*, 49 F. Supp. 3d 359, 363 (W.D.N.Y. 2014) ("[the doctor's] opinion . . . does not specify any particular limitation on plaintiff's capacity: it is no more than a conclusory opinion on the ultimate issue of disability, which is unquestionably a matter reserved to the Commissioner") (internal quotation omitted); *Thompson v. Colvin*, 2014 WL 7140575, *9 (D. Vt. 2014) (doctor's opinion that claimant was currently unable to work was not entitled to weight; "the opinion[] [is] conclusory and do[es] not list any practical functional consequences of [claimant's] mental impairments, stating merely that 'complications with anxiety, PTSD[,] and agoraphobia' have caused her to be unable to work"); *Emery v. Astrue*, 2012 WL 4892635, *6 (D. Vt. 2012) ("the ALJ was not obligated to afford significant weight to [the doctor's] conclusory opinion that [claimant's] impairments limited 'her ability to hold a full-time job'").

9

(4) whether the opinion is from a specialist, and

(5) whatever other factors tend to support or contradict the opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010). The regulations also direct that the ALJ should "give good reasons in [his] notice of determination or decision for the weight [he] give[s] [claimant's] treating source's opinion." *Halloran v. Barnhart*, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(c)(2)). "Even if the above-listed factors have not established that the treating physician's opinion should be given controlling weight, it is still entitled to deference, and should not be disregarded." *Salisbury v. Astrue*, 2008 WL 5110992, *4 (W.D.N.Y. 2008). The same factors should be used to determine the weight to give to a consultative physician's opinion. *Tomasello v. Astrue*, 2011 WL 2516505, *3 (W.D.N.Y. 2011). "However, if the treating physician's relationship to the claimant is more favorable in terms of the length, nature and extent of the relationship, then the treating physician's opinion will be given more weight than that of the consultative examining physician." *See id.*

In his decision, the ALJ reviewed Raymer's medical records and Hopson's medical assessment. (Tr. 15-16). The ALJ stated that he afforded Hopson's medical assessment "considerable weight" because it was generally consistent with the medical records. (*Id.*). In reaching this conclusion, the ALJ limited Raymer to sedentary work, except that Raymer could stand or walk no more than one hour total per day and could walk or stand for no more than ten minutes during each hour. (*Id.*). According to the ALJ, these limitations were consistent with Hopson's opinion that Raymer could stand or walk for less than two hours per day and could walk for no more than ten minutes at a time and could stand for no more than five minutes at a time. (*Id.*). Additionally, the ALJ concluded that Raymer should be permitted to wear a cam walker boot to assist with his mobility, consistent with Hopson's notation that Raymer was using

10

a cam walker boot for ambulation. (*Id.*). The ALJ also incorporated some postural limitations into Raymer's RFC, including limitations on his ability to climb, balance, stoop, crouch, kneel and crawl. (*Id.*). According to the ALJ, the postural limitations that he assessed were consistent with the limitations identified by Hopson in his assessment. (*Id.*).

Raymer does not dispute that the ALJ's RFC assessment with respect to Raymer's ability to stand, walk and sit is generally consistent with the opinions contained in Hopson's medical assessment. (Docket # 8-2 at 14). Instead, Raymer contends that the ALJ's RFC assessment failed to incorporate other limitations assessed by Hopson. According to Raymer, the ALJ ignored the following limitations:

> (1) pain that would constantly interfere with his ability to maintain the attention and concentration necessary to perform simple work tasks (Tr. 403);
>
> (2) likely absences from work totaling approximately four days each month (Tr. 405);
>
> (3) need to take an unscheduled ten minute break every hour (Tr. 404); and
>
> (4) need to alternate between sitting, standing and walking throughout the day (*id.*).

(Docket ## 8-2 at 14-15; 14 at 2). Additionally, Raymer contends that the ALJ improperly rejected Hopson's opinion that Raymer would need to elevate his leg throughout the workday. (*Id.*).

As a general matter, "the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,'" *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (quoting *Gecevic v. Sec. of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995)), and there is no "absolute bar to crediting only portions of medical source opinions." *Younes v. Colvin*, 2015 WL 1524417, *8 (N.D.N.Y. 2015). Yet, where the

11

ALJ's "RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d at 297 (quoting Soc. Sec. Ruling 96-8p, 1996 WL 374184, *7 (1996)). Accordingly, an ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions. *See Younes v. Colvin*, 2015 WL 1524417 at *8 (although an ALJ is free to credit only a portion of a medical opinion, "when doing so smacks of 'cherry picking' of evidence supporting a finding while rejecting contrary evidence from the same source, an administrative law judge must have a sound reason for weighting portions of the same-source opinions differently"); *Phelps v. Colvin*, 2014 WL 122189, *4 (W.D.N.Y. 2014) ("[t]he selective adoption of only the least supportive portions of a medical source's statements is not permissible") (internal quotations and brackets omitted); *Caternolo v. Astrue*, 2013 WL 1819264, *9 (W.D.N.Y. 2013) ("[i]t is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination") (internal quotations omitted) (collecting cases); *Searles v. Astrue*, 2010 WL 2998676, *4 (W.D.N.Y. 2010) ("[a]n ALJ may not credit some of a doctor's findings while ignoring other significant deficits that the doctor identified").

In this case, the ALJ adopted the sitting, standing and walking limitations and the bulk of the postural limitations identified by Hopson because he concluded those limitations were consistent with the record. (Tr. 16). In doing so, the ALJ ignored other limitations assessed by Hopson without explanation. Those limitations, if considered and adopted, may have resulted in a finding that Raymer was disabled. Indeed, Hopson opined that Raymer was likely to be absent approximately four days each month, and the vocational expert testified that absences in excess of one day per month would preclude competitive employment for unskilled,

entry level work. (Tr. 62, 405). Similarly, Hopson opined that Raymer would need an unscheduled break of approximately ten minutes in duration every hour, and the vocational expert testified that such a limitation would preclude competitive employment. (Tr. 71, 404).

The government urges this Court to infer from the ALJ's decision that he considered these additional limitations and properly rejected them because they were not supported (and indeed contradicted) by other evidence in the record. (Docket # 11-1 at 18-19). I disagree that the ALJ's decision permits an inference that he considered and rejected the limitations contained in Hopson's opinion. Rather, the ALJ completely ignored in his decision some of the limitations identified by Hopson, and I am unable to determine whether the ALJ considered them or overlooked them altogether.[5] *Allen v. Comm'r of Soc. Sec.*, 2012 WL 4033711, *9 (N.D.N.Y. 2012) ("[b]ecause the ALJ failed to explain why portions of [the nurse practitioner's and doctor's] medical source statements were not adopted, the [c]ourt finds that the ALJ did not apply the correct legal standard in determining [p]laintiff's RFC assessment"); *Overbaugh v. Astrue*, 2010 WL 1171203, *9 (N.D.N.Y. 2010) ("[b]ecause the ALJ offered no explanation for failing to include the limitations into plaintiff's RFC, the [c]ourt is unable to determine how the ALJ arrived at plaintiff's RFC[;] [t]he ALJ's failure to explain why he disregarded portions of [the doctor's] assessment, while simultaneously assigning it controlling weight, constitutes legal error"); *May v. Barnhart*, 2007 WL 203986, *5 ( D.N.H. 2007) ("[i]n light of the ALJ's failure to address the opinion of [mental health counselor and doctor] that claimant's impairments will cause her to be absent from work more than three times days each month, the most prudent course is to remand this matter for further proceedings"); *Dioguardi*,

---

[5] For instance, there is little doubt that the ALJ considered, and ultimately found incredible, Raymer's complaints of pain. (Tr. 16). In that discussion, however, the ALJ does not mention Hopson's opinion that Raymer would constantly experience pain severe enough to interfere with the attention and concentration necessary to perform simple work tasks. Thus, the Court is unable to determine whether the ALJ considered and rejected this opinion, or instead overlooked it altogether. If the latter occurred, consideration of Hopson's opinion could have affected the ALJ's credibility determination.

13

445 F. Supp. 2d at 298 ("[w]ith no explanation provided, it is not possible for the [c]ourt to know why . . . the ALJ chose to disregard the evidence that was more favorable to plaintiff's claim[;] [h]er failure to reconcile the RFC assessment with medical source statements was error, and based upon the testimony given by the vocational expert, the failure was not harmless").

Remand is especially appropriate where, as here, the ALJ gave Hopson's opinion "considerable weight," but failed to provide an explanation for not incorporating into the RFC some of the limitations identified in that opinion – particularly those that would lead to a finding of disability. *See Beckers v. Colvin*, 38 F. Supp. 3d 362, 372 (W.D.N.Y. 2014) ("[t]he ALJ failed to explain why he would adopt [the doctor's] opinions concerning [p]laintiff's marked limitations but reject her opinion that would likely lead to a finding of disability"); *Henkle v. Colvin*, 2014 WL 880370, *4 (E.D. Cal. 2014) ("the court is persuaded by the fact that the ALJ essentially 'cherry-picked' the treating physician's medical opinion by finding all of the doctor's conclusions to be 'well supported by the evidence' except the lone aspect of the medical opinion that would require a finding that the plaintiff was disabled"); *Caternolo v. Astrue*, 2013 WL 1819264 at *9 ("[t]he ALJ assigned parts of the [doctor's] opinion 'significant' weight, but he completely disregarded the portion of the report that would have led to a finding of disability"); *Smith v. Comm'r of Soc. Sec.*, 2011 WL 6372792, *10 (D. Vt. 2011) (ALJ committed legal error by rejecting doctor's opinion that claimant would be absent from work more than four days per month; "the ALJ was not free to ignore an opinion from a treating physician"); *Searles v. Astrue*, 2010 WL 2998676 at *4 (remand appropriate where "the ALJ failed to explain why he ignored portions of an opinion for which he granted 'significant weight'").

On remand, the ALJ is directed to evaluate Hopson's opinions and to "clearly delineate which portions of [Hopson's] opinions will be incorporated into his RFC finding, and

14

which will not be included." *Beckers v. Colvin*, 38 F. Supp. 3d at 372. If the ALJ does not include portions of Hopson's opinion, he must explain, in accordance with the treating physician rule and Social Security Ruling 96-8p, why those specific opinions provided by Raymer's treating physician were not incorporated into the RFC assessment. *See id.*

Raymer also contends that the ALJ failed to conduct the requisite two-step credibility analysis and that his credibility analysis was otherwise not based upon substantial evidence. (Docket ## 8-2 at 17-31; 14 at 4-6). In light of my determination that the ALJ erred in evaluating the opinion of Raymer's treating physician, thus warranting remand, I decline to evaluate whether the ALJ erred in assessing plaintiff's credibility. *See Balodis v. Leavitt*, 704 F. Supp. 2d 255, 268 n.14 (E.D.N.Y. 2010) ("[b]ecause the [c]ourt concludes that the ALJ erred in applying the treating physician rule, and that a remand is appropriate, the [c]ourt need not decide at this time whether the ALJ erred in assessing plaintiff's credibility"). On remand, the ALJ should re-evaluate Raymer's credibility after considering the evidence as a whole, and in light of the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), and should explicitly determine whether Raymer suffers from a medically determinable impairment or impairments that could be expected to produce his alleged symptoms. *See Larsen v. Astrue*, 2013 WL 3759781, *2 (E.D.N.Y. 2013) ("the [c]ourt notes that to the extent that the ALJ, on remand, reevaluates the evidence . . . , the ALJ should also consider whether that re-evaluation alters the assessment of the plaintiff's credibility in light of the evidence as a whole").

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 11)** is **DENIED**, and Raymer's motion for judgment on the pleadings

**(Docket # 8)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

                                          *s/Marian W. Payson*
                                          MARIAN W. PAYSON
                                      United States Magistrate Judge

Dated:  Rochester, New York
         August 25, 2015